**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **JOSEPH L. PORTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:23 CV 477** |
| | ) | |
| **OFFICER T. BROWN, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION and ORDER**

This matter is before the court on defendants' motion for summary judgment. For the reasons stated below, defendants' motion (DE # 55) will be granted with relief different than requested.

## I. BACKGROUND

Plaintiff Joseph Porter, a prisoner proceeding without counsel, was granted leave to pursue his claim against Fort Wayne Police Officers Treven Brown and Joel Lengerich in their individual capacities for money damages for allegedly using excessive force on plaintiff in effectuating his arrest on March 18, 2023. (*See* DE # 29.)

On March 18, 2023, Officer Brown became aware that a victim had been stabbed and was in serious condition. (DE # 57-1 at 1.) The suspect was identified as Joseph Porter, and Officer Brown was advised that Porter had left the scene in a gray 2005 Trailblazer with Indiana license plate number TKD515. (*Id.*) At 6:30 p.m., the same day, Fort Wayne police officers responded to a call from a resident who said that a Black male in a gray Trailblazer had come to her home, covered in blood. (*Id.* at 1-2.) She did

not know the man, and he left before police arrived. (*Id.* at 2.) Officer Brown was advised that Porter was believed to be under the influence of methamphetamine. (*Id.*)

An hour later, Officer Brown located a gray Trailblazer in the parking lot of a school. (*Id.*) The vehicle had Indiana license plate number TKD515. (*Id.*) There were several other cars in the parking lot and there appeared to be an event occurring at the school. (*Id.*) Officer Lengerich arrived on the scene as well. (DE # 57-2 at 1.) Plaintiff exited the vehicle and Officer Brown observed that plaintiff was wearing a thick Carhartt-style winter coat and no shoes. (DE # 57-1 at 2.) Officer Brown could also see what appeared to be a large amount of blood on plaintiff's coat. (*Id.*) Plaintiff put his hands out and said something about not having a weapon. (*Id.*) Officer Brown told plaintiff to turn around several times before plaintiff complied. (*Id.*) Officer Brown instructed plaintiff to walk backwards, toward Officer Brown. (*Id.*) As he did so, Officer Brown's K9 partner, Alex, was barking in his vehicle. (*Id.*) Plaintiff briefly put his hands on his head, as directed, but then moved them away from his body. (*Id.*) One of the officers instructed plaintiff to move to his knees and to place his hands back on his head. (*Id.*) After being told several times, plaintiff complied. (*Id.*)

As other officers arrived on the scene, Officer Brown instructed plaintiff to stay where he was, but plaintiff got up and began to run toward his vehicle. (*Id.*) Plaintiff ran past the driver's door and past the front of the vehicle. (*Id.* at 3.) Officer Brown, concerned that plaintiff was attempting to flee toward the school, obtained K9 Alex from his vehicle. (*Id.*) Officer Lengerich advised plaintiff to stop or they would send a

police dog, but plaintiff continued to run. (*Id.*) Officer Brown told plaintiff to get onto the ground or he would get bitten. (*Id.*)

Plaintiff then climbed onto the hood of the vehicle. (*Id.*) He was on his knees with his hands in view. (*Id.*) He said something that sounded like, "This will not feel good." (*Id.*) He was repeatedly told to get off the car or he would get bitten, and Officer Lengerich advised him that he would be tased. (*Id.*)

Officer Brown was concerned that in order to deploy a TASER, Officer Lengerich would need to move closer to plaintiff and Officer Brown was uncertain if plaintiff was still armed with any weapons. (*Id.*) Officer Brown was also concerned that plaintiff's thick jacket would make the TASER ineffective, or that plaintiff would get injured if tased from the elevated position on the vehicle. (*Id.*)

Plaintiff became agitated, began to yell, and moved his hands down toward his waist and jacket pockets, where Officer Brown knew weapons to be commonly kept. (*Id.*) Officer Brown gave K9 Alex a command to apprehend plaintiff. (*Id.*) K9 Alex jumped onto the hood of the car and attempted to grab plaintiff. (*Id.*) Plaintiff grabbed K9 Alex around the shoulders and neck and punched K9 Alex four times. (*Id.*) K9 Alex and plaintiff came off the hood of the vehicle and plaintiff grabbed K9 Alex and threw him into the front of the vehicle. (*Id.*) K9 Alex did not release his hold on plaintiff, and Officer Lengerich deployed a TASER, which appeared to have partial neuromuscular incapacitation, and plaintiff fell to the ground. (*Id.*)

The officers repeatedly told plaintiff to stop resisting, which he did not do. (*Id.* at 3-4.) The officers got plaintiff onto his stomach and K9 Alex maintained his hold on plaintiff's arm. (*Id.* at 3.) Officer Lengerich deployed the use of the TASER's drive stun for five seconds. (DE # 57-2 at 2.) Plaintiff continued to struggle and yell as the officers attempted to subdue him. (*Id.*) Officer Lengerich placed the TASER on plaintiff's thigh and initiated another drive stun. (*Id.*) Plaintiff continued to resist the officer's instructions, and Officer Lengerich initiated a third drive stun before plaintiff was able to be handcuffed by the officers. (*Id.*; *see also* body camera video footage, Exhibits 2-4 to Bowers Affidavit, DE # 57-3.) Officer Brown felt pain in the inner back portion of his right thigh and realized that plaintiff had bitten him. (DE # 57-1 at 4.) Officer Brown then felt a second pain in the same area and realized that plaintiff had bitten him a second time. (*Id.*) Once plaintiff was handcuffed and placed in leg shackles, Officer Brown instructed K9 Alex to release plaintiff. (DE # 57-1 at 4.)

Plaintiff was found guilty, but mentally ill, in state court criminal proceedings of (among other crimes) battery with bodily injury to a public safety official and resisting law enforcement. (DE # 57-5; DE # 57-4 at 216-217.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

## III. ANALYSIS

### *A. Timeliness of Motion and Response*

Plaintiff argues that defendants' motion for summary judgment was untimely. (DE # 73 at 1.) He is incorrect. The court issued at deadline of February 27, 2026, for any

dispositive motion and defendants filed their motion on February 27, 2026. (DE ## 50, 55.)

Defendants argue that plaintiff's response was untimely. (DE # 74 at 1.) They are only partially correct. The court instructed plaintiff to file a signed response to defendants' motion by May 29, 2026, and cautioned him that if he did not respond by this deadline his response may be stricken. (DE # 68.) Plaintiff's response was in the mail by May 28, 2026, (*see* DE # 71-1), and is therefore timely under the prison mailbox rule. *See e.g. Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001) (prisoner filings are considered 'filed' at the moment of delivery to prison officials, rather than when court has receipt of document). Plaintiff's amended response however, which was dated June 1, 2026, and filed without leave of court, is untimely. (DE # 73.) While untimely, the court declines to strike plaintiff's amended response.

*B.* Heck *Bar*

Defendants argue that plaintiff's excessive force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because if the court were to enter a finding in favor of plaintiff on his civil rights claim, the court would effectively invalidate his convictions for battery against a public safety offical and resisting law enforcement. (DE # 56 at 12.) Under *Heck*, "a person cannot use § 1983 to collect damages on a theory irreconcilable with a conviction's validity, unless that conviction has been set aside." *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019). However, it is not the case that all excessive force claims are *Heck*-barred where the plaintiff was convicted of resisting law enforcement.

"The propositions 'the suspect resisted arrest' and 'the police used too much force to effect the arrest' can be true at the same time[.]" *Id.* If, for example, a plaintiff chooses to proceed on a theory that he was an innocent bystander, attacked by police, who did not try to fend them off, a conviction for resisting arrest would be inconsistent with an award for damages. *Id.* However, a plaintiff who does not deny that he attempted to obstruct police from maintaining his custody after his arrest, but contends that the officers used force that was unreasonable in relation to the nature of his obstruction, can have his claim resolved without casting doubt on the validity of his conviction. *See id.* (*Heck* did not bar plaintiff's claims regarding degree of force police used while he resisted officers).

Plaintiff's only substantive response to defendants' motion is his claim that he fell to the ground after being tased the first time, and from that point onward he did not resist. (DE # 73 at 4.) He argues that the officers continued to allow K9 Alex bite him while they tased him three additional times, kneed him, and punched him.[1] (*Id.*) These claims are barred by *Heck* until his convictions for battery against a public safety official and resisting arrest are overturned. The evidence at trial was that, after the first use of

---

[1] The video evidence of the arrest, captured from multiple angles, contradicts plaintiff's claim that the officers punched him. Accordingly, plaintiff's claim that the officers punched him does not create a genuine issue of material fact that would preclude summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (video evidence so discredited plaintiff's version of events that no reasonable jury could believe him; court of appeals should have viewed the facts in the light depicted by the videotape).

the taser, plaintiff continued to resist the officers and bit Officer Brown twice on the leg. (DE # 57-4 at 65.) Evidence was given that plaintiff continued to be tased and K9 Alex continued to be deployed until the officers were able to handcuff plaintiff, and even then plaintiff continued "fighting, kicking, and trying to move away from [the officers]." (*Id.* at 66.) Plaintiff could not prevail on his present claim that he was compliant, and thus the force used against him after the first taser-deployment was excessive, without necessarily undermining his criminal convictions. Accordingly, plaintiff's civil claim is *Heck*-barred. *See Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003); *Noel v. Coltri*, 858 F. App'x 192, 194 (7th Cir. 2021) (plaintiff, who was convicted of aggravated battery and resisting arrest after kicking and slapping officer, could not proceed on excessive force claim).

## IV. CONCLUSION

For these reasons, the court **GRANTS with relief different than requested** defendants' motion for summary judgment. (DE # 55.) The court **DISMISSES** plaintiff's case without prejudice pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).[2]

**SO ORDERED.**

Date: September 16, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

[2] "A suit barred by the doctrine of *Heck* is premature and must be dismissed without prejudice, because *Heck* holds that the claim does not accrue until the conviction has been set aside." *Johnson*, 944 F.3d at 968.